**LAW BULLETIN PUBLISHING, CO., Plaintiff,**

v.

**LRP PUBLICATIONS, INC., et al., Defendants.**

No. 97 C 8334.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 30, 1998.

---

Robert Edward Kehoe, Jr., Chicago, IL, for Plaintiff.

James S. Montana, Jr., Nancy L. Hendrickson, Rudnick & Wolfe, Chicago, IL, Joseph D. Wargo, Jeanine Gibbs, J. Scott Carr,

Altman, Kritzer & Levick, P.C., Atlanta, GA, for Defendants.

### MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendants LRP Publications, Inc. and Joanne Fiore's motion to transfer venue pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the court grants defendants' motion and transfers this case to the United States District Court for the Southern District of Florida, West Palm Beach Division.

### I. BACKGROUND

Plaintiff Law Bulletin Publishing Company ("LBPC") is an Illinois corporation whose principal place of business is in Chicago, Illinois. LBPC owns and publishes various legal publications, including the *Illinois Jury Verdict Reporter*, the *Cook County Jury Verdict Reporter*, and related search services (collectively referred to as "LBPC's publications"). LPBC's publications provide information to subscribers about events, developments, and trends concerning legal activities in Illinois state and federal courts.

Defendant LRP Publications, Inc. ("LRP") is a Pennsylvania corporation whose principal place of business is in Pennsylvania. LRP is in the process of moving its corporate headquarters to Palm Beach Gardens, Florida. LRP publishes various legal publications, which are national, not local, in scope. LRP also maintains a Jury Verdict Research Database.

Defendant Joanne Fiore ("Fiore"), a resident of West Palm Beach, Florida, is a Vice President of defendant LRP. On behalf of LRP, Fiore subscribed to LBPC's publications by signing a subscription agreement. She requested the subscription agreement from Florida. The subscription agreement is a pre-printed form that does not contain a forum selection clause or a choice-of-law provision. The parties did not negotiate the three terms of the subscription agreement.

The third term of subscription agreement provides as follows:

> We will not make any copies of any reports or disks for which this subscription is for, recognizing that the Law Bulletin Publishing Company has copyright interest in each. Under no circumstances will we furnish any copies, or any of the information contained therein, in bulk form to any third-party, and we will not computerize, record, reproduce or re-market any portion of the publication or the selected material which it contains. Upon the termination of this subscription, we may keep the original issues of the publication for our own use, subject to continued restrictions as if the subscription were ongoing.

On November 12, 1997, LBPC filed a complaint against defendants LRP and Fiore in the Circuit Court of Cook County, Illinois, County Department, Law division. LBPC's complaint contains four counts: Count I alleges breach of contract; Count II alleges violations of Illinois statutory law; Count III alleges violations of the Lanham Act, 15 U.S.C. § 1125; and Count IV alleges common law unfair competition. These counts are based on LBPC's allegations that (1) Fiore has been "copying or otherwise conveying to LRP the content of [LBPC's publications] for the purpose of including such information in original and derivative form in the LRP database" in violation of the subscription agreement; (2) LRP has been conveying the information in bulk form to third parties; and (3) LRP has promoted its database by falsely claiming that the database contains information certified by all participating attorneys, but has failed to disclose that its material is taken from LBPC's publications.

On December 1, 1997, defendants LRP and Fiore filed a notice of removal pursuant to 28 U.S.C. §§ 1441 and 1446, based on the fact that this court had original jurisdiction over the case pursuant to 28 U.S.C. § 1331 because Count III of LBPC's complaint is a Lanham Act claim.[1] On December 15, 1997,

---

1. The notice of removal also alleges that this court had original jurisdiction over this case pursuant to 28 U.S.C. § 1332. Plaintiff's complaint, however, contains no express *ad damnum*, as to at least one claim asserted by at least one plaintiff, in an amount exceeding $75,000 (exclusive of interest and costs). In such a case, defendants are required to comply with Local Civil Rule 3,

defendants LRP and Fiore filed a motion to transfer the case to the United States District Court for the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. § 1404(a). On that same day, defendant LRP filed a motion to dismiss LBPC's complaint, and defendant Fiore filed a motion to dismiss LBPC's complaint against her for lack of personal jurisdiction.

## II. *DISCUSSION*

■ Section 1404(a), which governs the transfer of an action from one federal district court to another, provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A transfer under § 1404(a) is appropriate if: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *Vandeveld v. Christoph,* 877 F.Supp. 1160, 1167 (N.D.Ill. 1995). In determining whether a motion under § 1404(a) should be granted, the court must seek to promote the efficient administration of justice and not merely the private interests of the parties. *North Shore Gas Co. v. Salomon, Inc.,* 896 F.Supp. 786, 791 (N.D.Ill.1995). The determination of whether a case should be transferred pursuant to § 1404(a) is committed to the sound discretion of the trial court. *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir.1989); *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986).

■ In this case, defendants LRP and Fiore assert, and LBPC does not contest, that venue is proper in both the transferee and the transferor court. *See* 28 U.S.C. § 1391(b). What the parties dispute is whether the convenience of parties and witnesses and the interest of justice factors weigh in favor of transfer. It is those two factors, therefore, that the court addresses.

which sets out the procedure a defendant must follow in order to show the court that the requirements of diversity jurisdiction have been met. Defendants have not complied with Local

### A. *Convenience of the parties and witnesses*

■ First, the court must consider the convenience of the parties and witnesses. When evaluating the convenience of the parties and witnesses, the court should consider: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums. *North Shore Gas Co.,* 896 F.Supp. at 791; *College Craft Companies, Ltd. v. Perry,* 889 F.Supp. 1052, 1054 (N.D.Ill.1995). The moving party bears the burden of showing that the transferee forum is more convenient. *Chemical Waste Management, Inc. v. Sims,* 870 F.Supp. 870, 876 (N.D.Ill.1994).

### 1. Plaintiff's choice of forum

■ A plaintiff's chosen forum is entitled to substantial deference, particularly where the chosen forum is the plaintiff's home forum. *Vandeveld,* 877 F.Supp. at 1167. However, where the plaintiff's chosen forum is not the situs of material events, plaintiff's chosen forum is entitled to less deference. *Heller Fin., Inc.,* 713 F.Supp. at 1129. Further, while a plaintiff's choice of forum is an important consideration in determining whether a motion to transfer should be granted, it is not absolute and will not defeat a well-founded motion to transfer. *Applied Web Sys., Inc. v. Catalytic Combustion Corp.,* No. 90 C 4411, 1991 WL 70893, at *3 (N.D.Ill. Apr.29, 1991).

In this case, Illinois is both LBPC's home forum and chosen forum. However, while the case does have some connection to Illinois, as discussed below, Florida is the situs of the overwhelming majority of material events. Accordingly, LBPC's choice of forum is entitled to less deference.

### 2. Situs of material events

In this case, the overwhelming majority of the material events occurred in Florida.

Civil Rule 3. Accordingly, the court cannot make a meaningful determination as to whether the requirements for diversity jurisdiction are satisfied in this case.

Florida is the situs where (1) Fiore signed and allegedly breached the subscription agreement; (2) the relationship between LRP and Fiore is centered; and (3) LRP's database is located. Thus, the conduct upon which LBPC's claims are based occurred in Florida. It is true that any injury resulting from LRP's alleged unfair competition would have occurred in Illinois. *See North Shore Gas Co.,* 896 F.Supp. at 791–92. However, under the facts of this case, the court finds that Florida is clearly the situs of the overwhelming majority of the material events.

### 3. The relative ease of access to sources of proof

LBPC claims that "various files and records that are pertinent to the litigation" are in Illinois. (Pl.'s Memo. Ex. B at 11.) LRP claims that the documents which are the focus of the litigation are "voluminous" and are either in Florida or are soon to be moved from Pennsylvania to Florida. The court is satisfied, however, that either party can easily bring to the district in which the case is litigated those documents that are not there already. *See Chemical Waste Management,* 870 F.Supp. at 876. Therefore, this consideration neither militates for or against transfer.

### 4. Convenience of the witnesses

■ "The convenience of witnesses is often viewed as the most important factor in the transfer balance." *Rose v. Franchetti,* 713 F.Supp. 1203, 1214 (N.D.Ill.1989); *see also Dunn v. Soo Line R.R. Co.,* 864 F.Supp. 64, 65 (N.D.Ill.1994). The determination of whether a particular venue is more convenient for the witnesses should not turn on which party produces a longer witness list. *Chemical Waste Management,* 870 F.Supp. at 876. Rather, the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case. *Vandeveld,* 877 F.Supp. at 1168.

In this case, defendants have specifically identified eleven LRP employees and two non-employees who LRP intends to call as witnesses.[2] From the description LRP has given about the individuals likely testimony, the court was able to determine that the witnesses' testimony would be relevant and important to LRP's case. Eleven of those thirteen witnesses are located in Florida, and none are located in Illinois.

LBPC has not identified specific witnesses that it intends to call at trial. LBPC has identified seven employees who are located in Illinois and has provided a general description of their involvement with LBPC.[3] From the descriptions, it is apparent that Brennan Kelly and Elizabeth Adams have nothing different to offer than Christine Davis and that Madeline Fogarty has nothing different to offer than Janet Orchowski. Thus, if the court were to consider the identified employees as potential witnesses, at best only four of the listed employees have noncumulative, relevant, and important testimony.

LBPC also claims that there are "many" Illinois attorneys who live in Illinois who have relevant testimony to certain issues in the case. (Pl.'s Memo. Ex. B at 9–10.) LBPC asserts that while it cannot specifically identify these individuals because it needs discovery from defendants in order to do so, the court should consider the convenience of these witnesses when determining whether this case should be transferred.

The court, however, will not consider the convenience of such unidentified witnesses. *See Vandeveld,* 877 F.Supp. at 1167–68. First, while LBPC hopes that discovery will produce Illinois attorneys who will testify in their case at trial, there is no guarantee that such witnesses actually exist. Further, LBPC's claim that there are "many" is too vague to be informative.

LBPC also argues that the court should consider the convenience of the "many people with pertinent evidence who live and work in

---

2. These witnesses are David Boxold, Kenneth Kahn, Jeanine Lerner, Mark McGuriman, Philip Querty, Peter Rinato, Jana Shellington, Milton Stern, Farah Stevens, Melissa Weinstock, Jason Wise, Wendy Werb, and Tom York. Although LRP also identified Joanne Fiore, the court does not count her in this part of the analysis as she is actually a party to the litigation.

3. These individuals are Elizabeth Adams, Jeffrey Bope, Christine Davis, Madeline Fogarty, Brennan Kelly, John Kirkton, and Janet Orchowski.

neither Illinois or Florida, but for whom Illinois would be a more centralized and convenient situs for them to participate in a trial in this matter." (Pl.'s Memo. Ex. B at 10.) These unidentified witnesses are also insignificant in the court's determination of whether to transfer the case. LBPC has not identified any specific individual or indicated to the court approximately how many of these individuals it would expect to call at trial. Further, these witnesses would be away from their homes and work regardless of whether the trial is held in Florida or Illinois.

In sum, LRP has identified a greater number of expected witnesses who have relevant and important testimony and who are located in Florida. It is true that all of LBPC's and most of LRP's expected witnesses are employee-witnesses, whose convenience is generally assigned little weight. *Applied Web Sys.*, 1991 WL 70893, at *5. However, LBPC has identified two non-employee witnesses that are expected to testify. Further, notwithstanding that the employee-witnesses' expenses will probably be paid by their respective employer, testifying at trial requires travel and disruption of one's personal life. Thus, from the parties' submissions, the court has determined that the convenience of the witnesses weighs in favor of transferring the case to Florida.

### 5. Convenience to the parties

The next factor the court should consider is the convenience of the litigants. Specifically, the court should consider their respective residences and their ability to bear the expenses of litigating in a particular forum. *Habitat Wallpaper & Blinds, Inc. v. K.T. Scott Ltd. Partnership*, 807 F.Supp. 470, 474 (N.D.Ill.1992). Transfer is inappropriate if it "merely transforms an inconvenience for one party into an inconvenience for the other party." *Chemical Waste Management*, 870 F.Supp. at 876 (citing *Sage Prods., Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213, 216 (N.D.Ill.1993)).

Plaintiff LBPC is a resident of Illinois. Defendant Fiore is a resident of Florida, and defendant LRP is in the process of moving to Florida. Therefore, as far as the residences of the parties are concerned, any consideration of the convenience of the parties is a wash.

LRP has also submitted evidence that litigation in Illinois would not be just inconvenient; rather, it would be a hardship due to special circumstances. First, LRP has submitted evidence that it is in the process of relocating its corporate headquarters from Pennsylvania to Florida. LRP claims that it will suffer a severe hardship if its key personnel who are overseeing the relocation are absent for any period of time. LRP has also submitted evidence that it has received grants totaling $430,000 from the state of Florida and Palm Beach County. One of the conditions of the grants is that LRP must hire a certain number of individuals in Palm Beach County by October of 1998. LRP claims that is will be difficult to attain the hiring goals if it is forced to divert its resources and employees to litigate the matter in Illinois. LBPC has not controverted the evidence.

On the other hand, LBPC has not demonstrated that it will suffer a unique hardship if the case is litigated in Florida. LBPC does claim that it has no connection to Florida. However, that claim is belied by the fact that it entered into a contract with a Floridian.

Based on the above facts, transferring the case from Illinois to Florida would not simply be transferring the inconvenience from LRP and Fiore to LBPC; rather, the overall inconvenience to the parties would be less. Accordingly, consideration of the convenience to the parties favors transfer of the case to Florida.

### B. *Interests of justice*

The final factor to be considered is whether transfer will serve the interest of justice. The "interest of justice" component "embraces traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *TIG Ins. Co. v. Brightly Galvanized Prods., Inc.*, 911 F.Supp. 344, 346 (N.D.Ill.1996). It includes such considerations as the speed at which the case will proceed to trial and the court's familiarity with the applicable law. *Id.* The

administration of justice is served more efficiently when the action is litigated in the forum that is "closer to the action." *Paul v. Lands' End, Inc.,* 742 F.Supp. 512, 514 (N.D.Ill.1990).

### 1. Speed at which the case will proceed to trial

LBPC has attached the statistic reports from the *Federal Court Management Statistics* for the period ending September 30, 1996. LBPC argues that the statistics "clearly" reveal that transfer to the Southern District of Florida is not warranted, comparing statistics on pending cases per judge and the number of filings in each district. However, as this court has previously explained, of the numerous court management statistics, the two most relevant statistics to the court's current analysis are (1) the median months from filing to disposition and (2) the median months from filing to trial. *Vandeveld,* 877 F.Supp. at 1169; *Applied Web Sys., Inc.,* 1991 WL 70893, at *8.

For the purposes of making the relevant comparison, the court obtained the statistics for the period ending September 30, 1997. ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, 1997 FEDERAL COURT MANAGEMENT STATISTICS. The median months from filing to disposition was 5 months in the Northern District of Illinois compared to 8 months in the Southern District of Florida, a difference of 3 months. However, the median months from filing to trial was 24 months in the Northern District of Illinois compared to 19 months in the Southern District of Florida, a difference of 5 months. This suggests that this case might proceed to trial quicker in the Southern District of Florida than in the Northern District of Illinois.

LBPC argues that the "pace of trials in Florida will no doubt be adversely impacted in the years post-reporting because of the lag effect of the sudden glut facing the Florida judges." (Pl.'s Memo. at 13.) However, the 1997 statistics do not support LBPC's argument. For both the period ending September 30, 1996 and the period ending September 30, 1997, the median months from filing to trial was 19 months. Thus, a comparison of the relevant statistics weighs in favor of transferring the case to the Southern District of Florida.

### 2. The court's familiarity with the applicable law

In this case, there are three claims to be governed by state law. Two of these, the breach of contract claim and the unfair competition claim, will be governed by state common law. The third is a claim for consumer fraud and unfair trade practices under Illinois statutory law.

LBPC claims, without providing an analysis, that Illinois law will govern the state common law claims. In contrast, LRP argues that under Illinois choice of law principles, Florida law will apply. LRP provides a brief analysis of this issue. LRP also asserts that Florida has a statute similar to Illinois' statutes for consumer fraud and unfair trade practices.

Without a meaningful analysis from LBPC on this issue, the court cannot determine which state's law would apply to the common law claims. *See Vandeveld,* 877 F.Supp. at 1169. However, whichever law applies, neither contract law nor unfair competition law is so unique as to be beyond the bounds of this court's sister court in Florida. *See Heller Fin., Inc.,* 713 F.Supp. at 1131. Further, LBPC does not dispute that Florida has a statute similar to Illinois' statutes for consumer fraud and unfair trade practices. Accordingly, consideration of the applicable law neither weighs in favor of nor against transfer.

### 3. Injunctive relief

In its complaint, LBPC prays for both mandatory and preventative injunctive relief. Specifically, LBPC asks the court to (1) enjoin defendants from further use of the contents of LBPC's publications; (2) direct defendants to discontinue using and to destroy databases containing material derived from LBPC's publications; (3) direct defendants to cancel or discontinue performing any contract with third parties involving the use of material obtained in violation of the subscription agreement; (4) direct defendants to take

all possible actions to recover, destroy, or otherwise decommission any databases in the hands of third parties containing such material; and (5) direct defendants to undertake corrective advertising.

LRP argues that LBPC's request for injunctive relief weighs in favor of transfer. LBPC argues that LRP's argument is "peculiar," stating that "defendants should be presumed to honor the rulings of any court of competent jurisdiction, and no transfer should be granted on the basis of blackmailing our justice system." (Pl.'s Memo. at 15.)

The court finds LRP's argument to be persuasive, not peculiar. The database which is the subject of much of the injunctive relief is located in Florida and cannot be moved. Further, by the time relief is granted, LRP's headquarters will be in Florida. Thus, as a practical matter in this case, Florida is the better forum to enforce and monitor any injunctive relief awarded because the Florida court would be "closer to the action." *See Paul,* 742 F.Supp. at 514; *see also Habitat Wallpaper & Blinds, Inc.,* 807 F.Supp. at 475.

### C.  *Resolution*

Based on the above considerations, the court has determined that this case should be transferred to the Southern District of Florida. It is true that Illinois is LBPC's chosen forum. However, other considerations strongly outweigh the deference to be given that choice. First, Florida is the situs of an overwhelming majority of the material events. Second, transfer would best serve the convenience of the parties and witnesses. Third, statistics suggest that the case might proceed to trial more quickly in Florida. Finally, a Florida court is in a better position to enforce and monitor any injunctive relief awarded.

### III.  *CONCLUSION*

For the foregoing reasons, the court grants defendants LRP Publications, Inc. and Joanne Fiore's motion to transfer venue pursuant to 28 U.S.C. § 1404(a). Accordingly, the court enters the following order:

1.  This case is transferred to the United States District Court for the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. § 1404(a).

2.  Defendant Joanne Fiore's motion to dismiss for lack of personal jurisdiction is stricken as moot.

3.  Defendant LRP Publications, Inc.'s motion to dismiss the complaint is to be decided by the transferee court.